## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STATE OF INDIANA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 24-1665 (RBW) |
| ) | |
| DEB HAALAND, in her official capacity ) | |
| as Secretary, United States Department of ) | |
| Interior, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## <u>MEMORANDUM OPINION</u>

On June 7, 2024, fourteen states and agencies of some of those states[1]—collectively, the

"plaintiffs"—filed their complaint against (1) Deb Haaland, in her official capacity as Secretary

of the United States Department of the Interior (the "Department"); (2) Sharon Buccino, in her

official capacity as the Department's Principal Deputy Director of the Office of Surface Mining

Reclamation and Enforcement (the "OSMRE"); (3) Glenda H. Owens, in her official capacity as

the Department's Deputy Director of the OSMRE; and (4) the OSMRE—collectively the

"defendants"—challenging "the national rulemaking entitled 'Ten-Day Notices and Corrective

Action for State Regulatory Program Issues,'" 89 Fed. Reg. 24,714 (Apr. 9, 2024) (the "Final

Rule"). <u>See</u> Petition for Judicial Review ("Pls.' Pet.") at 4, ECF No. 1. Currently pending

before the Court is the plaintiffs' Motion for Stay/Preliminary Injunction ("Pls.' Mot."), ECF

---

[1] The plaintiffs are the State of Indiana, the Indiana Department of Natural Resources, the State of West Virginia, the West Virginia Department of Environmental Protection, the State of Alabama, the Alabama Surface Mining Commission, the State of Alaska, the Alaska Department of Natural Resources, the State of Arkansas, the Commonwealth of Kentucky, the State of Louisiana, the Louisiana Department of Energy and Natural Resources, the State of Montana, the State of North Dakota, the State of Ohio, the State of Texas, the State of Utah, the Utah Department of Natural Resources, the Commonwealth of Virginia, the Virginia Department of Energy, and the State of Wyoming. <u>See</u> Petition for Judicial Review ("Pls.' Pet.") at 1–2, ECF No. 1.

No. 24.  Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must deny the plaintiffs' motion for a preliminary injunction or a stay of the Department's Final Rule.

## I.    BACKGROUND

### A.    Statutory Background

#### 1.    The Surface Mining Control and Reclamation Act

The Surface Mining Control and Reclamation Act of 1977 (the "SMCRA") is a comprehensive statutory scheme to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations[.]"  30 U.S.C. § 1202(a). "As part of its comprehensive regulatory scheme, the SMCRA provides for federal coordination with the states."  Coal River Mountain Watch v. U.S. Dep't of Interior, 146 F. Supp. 3d 17, 20 (D.D.C. 2015).  The SCMRA recognizes that "because of the diversity in terrain, climate, biologic, chemical, and other physical conditions in areas subject to mining operations, the primary governmental responsibility for developing, authorizing, issuing, and enforcing regulations for surface mining and reclamation operations subject to th[e SMCRA] should rest with the [s]tates[.]"  30 U.S.C. § 1202(f).  However, in passing the SCMRA, Congress recognized that a limited federal oversight and enforcement role was necessary because "[f]or a number of predictable reasons[—]including insufficient funding and the tendency of [s]tate agencies to be protective of local industry[—s]tate enforcement has in the past, often fallen short of the vigor necessary to assure adequate protection of the environment."  H.R. Rept. No. 93-

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the plaintiffs' Brief in Support of Motion for Stay/Preliminary Injunction ("Pls.' Mem."), ECF No. 25; (2) the Respondents' Brief in Opposition to Petitioners' Motion for a Stay / Preliminary Injunction ("Defs.' Opp'n"), ECF No. 33; (3) (Tendered) Response of Movants for Intervention in Opposition to Motion by Plaintiff States for Preliminary Injunction ("Intervenors' Opp'n"), ECF No. 34; and (4) the plaintiffs' Reply in Support of Motion for Stay/Preliminary Injunction ("Pls.' Reply"), ECF No. 38.

1072, at 111 (1977); see also id. ("While it is confident that the delegation of primary regulatory authority to the [s]tates will result in fully adequate state enforcement, the Committee [believes] that a limited [f]ederal enforcement role . . . [is] necessary to assure that the old patterns of minimal enforcement are not repeated.").  Therefore, the SMCRA includes several processes by which the federal government and citizens can engage in oversight of surface mining operations. See, e.g., 30 U.S.C. § 1271(a) (authorizing the Secretary to issue ten-day notices to state regulatory authorities if there is reason to believe violations of the SMCRA are occurring); id. § 1270 (authorizing citizen suits to compel compliance with the SMCRA).

To fulfill Congress's vision for the federal government's oversight role, the SMCRA established within the Department the OSMRE, see 30 U.S.C. § 1211(a), which—acting pursuant to the Secretary of the Interior's directives—is responsible for administering and implementing the SMCRA, see id. § 1211(c).  Relevant in this case, the SMCRA grants the Secretary of Interior and the OSMRE authority to approve proposed state regulatory programs regarding surface coal mining and reclamation operations on non-Federal and non-Indian lands. See id. § 1211(c)(1).  And, under the SMCRA, the Secretary is authorized to issue a "ten-day notice" to state regulatory authorities when "on the basis of any information available to him[ or her], including receipt of information from any person," there is "reason to believe that any person is in violation of any requirement of th[e SCMRA] or any permit condition required by th[e SMCRA . . . .]"  Id. § 1271(a)(1).  Upon receipt of such notice, a state regulatory authority must respond to the OSMRE within ten days notifying the Secretary that it has "take[n] appropriate action to cause said violation to be corrected" or "show[] good cause for such failure . . . ."  Id.  And, if the state regulatory authority fails to show that it has taken "appropriate action" or show good cause for not having done so within ten days, the SMCRA directs the

Secretary to "order [a f]ederal inspection of the surface coal mining operation at which the alleged violation is occurring . . . ." Id.  Finally, under certain circumstances, the SMCRA directs the Secretary—based on her findings arising out of this inspection—to order the cessation of mining at that site.  See id. § 1271(a)(2).

## 2. The 2024 Final Rule

On April 9, 2024, the Department promulgated the Final Rule, see generally Final Rule, 89 Fed. Reg. 24,714, which went into effect on May 9, 2024, see id. at 24,714.  The crux of the parties' dispute essentially centers on several changes the Final Rule makes to the ten-day notice process.  The plaintiffs claim that the Final Rule (1) "enlarges the Secretary's authority at the [s]tates' expense[]" by granting the Secretary authority to issue ten-day notices divorced from site-specific violations and targeted at state regulatory authorities, Pls.' Mem. at 2, reversing the prior administration's ten-day notice rule, see Clarification of Provisions Related to the Issuance of TDN to State Regulatory Authorities and Enhancement of Corrective Action for State Regulatory Program Issues, 85 Fed. Reg. 75,150 (Nov. 24, 2024) (the "2020 Final Rule"), and "longstanding agency practice," Pls.' Mem. at 2; (2) "discards requirements that citizens contact [s]tates with concerns before [contacting] the federal government," id.; (3) "imposes inflexible, arbitrary timelines for [s]tates to complete complex investigations," id.; and (4) "illogically requires the Secretary to blind herself to information that [s]tates possess when determining whether there is reason to believe that a violation exists," id.  The defendants respond that these challenged modifications in the Final Rule merely "partially restore[] the pre-2020 status quo[]" relating to the ten-day notice process, Respondents' Brief in Opposition to Petitioners' Motion for a Stay / Preliminary Injunction ("Defs.' Opp'n") at 12, ECF No. 33, and aim to "simplify and expedite" the ten-day notice process by, inter alia, revising the definitions of "good cause" and

"appropriate action," as well as the procedures for receiving and reviewing information in the ten-day notice process, <u>id.</u> at 13.

**B.    Procedural Background**

The plaintiffs—fourteen states and agencies of some of those states—are responsible for regulating surface mining and reclamation operations within their states, including the implementation and enforcement of the SMCRA.  <u>See</u> Pls.' Pet. ¶¶ 6–26.  In carrying out these duties, the plaintiffs provided comments to the Department regarding the Final Rule. <u>See id.</u>  Then, as indicated above, on April 9, 2024, the Department promulgated the Final Rule, which is the subject of this case and went into effect on May 9, 2024.  <u>See</u> Final Rule, 89 Fed. Reg. at 24,714.

On June 7, 2024, the plaintiffs filed their complaint against the defendants seeking review of the Department's promulgation and implementation of the Final Rule.  <u>See</u> Pls.' Pet. at 1.  Subsequently, on August 16, 2024, the plaintiffs "move[d] for a stay or preliminary injunction [to] prevent[] [the defendants] from enforcing the [F]inal [R]ule . . ."  Pls.' Mot. at 1.  The defendants filed their opposition to the plaintiffs' motion on September 13, 2024.  <u>See</u> Defs.' Opp'n at 1.  And, the plaintiffs filed a reply in support of their motion on September 27, 2024. <u>See</u> Reply in Support of Motion for Stay/Preliminary Injunction ("Pls.' Reply"), ECF No. 38.

Separately, on September 9, 2024, several environmental groups, namely Citizens Coal Council ("CCC"), Appalachian Voices ("AV"), the Sierra Club ("Sierra Club"), and the Center for Biological Diversity ("Center")—collectively the "intervenors"—filed an unopposed motion for leave to intervene as defendants in this case as of right, pursuant to Federal Rule of Civil Procedure 24(a)(2), or alternatively, permissive intervention under Federal Rule of Civil Procedure 24(b), <u>see</u> Unopposed Motion to Intervene as Defendants ("Movants' Mot.") at 1,

ECF No. 31, which the Court ultimately granted, see Order at 2 (Sept. 24, 2024), ECF No. 36.  In

doing so, the Court ordered the docketing of the intervenors' opposition to the plaintiffs' motion

for a preliminary injunction and/or stay, which the intervenors submitted on September 13, 2024.

See (Tendered) Response of Movants for Intervention in Opposition to Motion by Plaintiff States

for Preliminary Injunction ("Intervenors' Opp'n") at 1, ECF No. 34.

## II.     STANDARD OF REVIEW

### A.     Preliminary Injunction

Preliminary injunctions are "extraordinary remed[ies] that should be granted only when

the party seeking the relief, by a clear showing, carries the burden of persuasion." Cobell v.

Norton, 391 F.3d 251, 258 (D.C. Cir. 2004).  A party moving for a preliminary injunction must

show "(1) a substantial likelihood of success on the merits,[3] (2) that [it] would suffer

irreparable injury if the injunction were not granted, (3) that an injunction would not

substantially injure other interested parties, and (4) that the public interest would be furthered by

the injunction." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir.

2006).[4]  In "seeking a preliminary injunction, the movant has the burden to show that all four

factors, taken together, weigh in favor of the injunction." Abdullah v. Obama, 753 F.3d 193, 197

(D.C. Cir. 2014) (internal quotation marks omitted).  However, "[w]hen the defendant is the

---

[3] And, "[i]n this context, the 'merits' on which [the] plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." Obama v. Klayman, 800 F.3d 559, 565 (D.C. Cir. 2015). "In order to establish jurisdiction, a plaintiff must establish standing[,]" Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 913 (D.C. Cir. 2015) (citation omitted), and "[a]ccordingly, a party who seeks a preliminary injunction 'must show a "substantial likelihood" of standing[,]'" id. (quoting Klayman, 800 F.3d at 568). However, while "[a] party who fails to show a 'substantial likelihood' of standing is not entitled to a preliminary injunction[,]" id. (quoting Klayman, 800 F.3d at 568), failure to do so "requires denial of the motion for [a] preliminary injunction, not dismissal of the case[,]" id. (citing Klayman, 800 F.3d at 562, 568).

[4] As discussed in Section III.B.1, infra, the plaintiffs argue that the SMCRA "lowered the bar" for challenges under the SMCRA, Pls.' Mem. at 11, and therefore, they do not need to establish the traditional criteria for a preliminary injunction. However, the Court ultimately concludes that the plaintiffs must satisfy the traditional criteria for relief in this case.

government, factors (3) and (4) merge." Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv., 64 F.4th 1354, 1364 (D.C. Cir. 2023).

Although previously "[t]he four factors [were] typically [ ] evaluated on a 'sliding scale[]'" in this Circuit, Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009), the Supreme Court's decision in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), cast doubt on the propriety of that approach, see Save Jobs USA v. U.S. Dep't of Homeland Sec., 105 F. Supp. 3d 108, 112 (D.D.C. 2015) (noting that "[i]t is not clear whether th[e sliding scale] approach survives after Winter, which suggested that a likelihood of success on the merits must always be shown"). Indeed, "the [District of Columbia] Circuit has suggested that a positive showing on all four preliminary injunction factors may be required." Holmes v. Fed. Election Comm'n, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014). And at least some Circuit judges have "read Winter at least to suggest[—]if not to hold[—]'that a likelihood of success is an independent, freestanding requirement for a preliminary injunction[.]'" Sherley v. Sebelius, 644 F.3d 388, 393 (D.C. Cir. 2011) (citing Davis, 571 F.3d at 1296 (Kavanaugh, J., concurring)).

Similarly, Winter "makes clear[] [that] a mere 'possibility' of irreparable harm will not suffice." Cal. Ass'n of Private Postsecondary Schs. v. DeVos, 344 F. Supp. 3d 158, 167 (D.D.C. 2018) (quoting Winter, 555 U.S. at 22). Indeed, "a showing that irreparable injury is 'likely' is the sine qua non for obtaining a preliminary injunction—it is what justifies the extraordinary remedy of granting relief before the parties have had the opportunity fully to develop the evidence and fully to present their respective cases." Achagzai v. Broad. Bd. of Governors, No. 14-cv-768 (RDM), 2016 WL 471274, at *3–4 (D.D.C. Feb. 8, 2016). Therefore, "[a] movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary

injunction, even if the other three factors entering the calculus merit such relief."  Chaplaincy of

Full Gospel Churches, 454 F.3d at 297.[5]

### III.    ANALYSIS

The plaintiffs advance several arguments for why they are entitled to a preliminary

injunction or stay of the Department's Final Rule.  First, they argue that "Congress lowered the

bar for challenges under the [SMCRA,]" Pls.' Mem. at 11, and that "[t]o obtain relief against

'any order or decision,' [the plaintiffs] need only show that (1) all parties have been notified and

given an opportunity to be heard, (2) 'a substantial likelihood that [the plaintiffs] will prevail on

the merits,' and (3) a stay 'will not adversely affect the public health or safety or cause

significant imminent environmental harm to land, air, or water resources[,]'" id. (quoting 30

U.S.C. § 1276(c)), and the plaintiffs claim they have done so.  Second, the plaintiffs argue that

even under the traditional standard for preliminary injunctions, they are entitled to relief.  See id.

at 11–12.

In response, the defendants first raise several threshold arguments, including that the

plaintiffs' motion should be denied for failure to confer as required by Local Civil Rule 7(m).

See Defs.' Opp'n at 14–15.[6]  On the merits, the defendants argue that the Court should apply the

---

[5] "The standard for a stay is the same as for a preliminary injunction."  Comm. for a Constructive Tomorrow v. U.S.
Dep't of Interior, No. 24-774 (LLA), 2024 WL 2699895, at *2 (D.D.C. May 24, 2024) (citing Nken v. Holder, 556
U.S. 418, 433–34 (2009)).

[6] The defendants also argue that the plaintiffs "have not carried their burden to demonstrate Article III standing[]"
because they have not identified any cognizable injury in fact.  See Defs.' Opp'n at 16.  Although the defendants
appear to frame this matter as a jurisdictional issue, as the Court explained above, see supra note 3, the District of
Columbia Circuit has directed courts to assess whether "a party who seeks a preliminary injunction '[has] show[n] a
"substantial likelihood" of standing,'" Food & Water Watch, 808 F.3d at 913 (quoting Klayman, 800 F.3d at 568),
in determining whether the plaintiff has shown a substantial likelihood of success on the merits, see Klayman, 800
F.3d at 565 ("In this context, the 'merits' on which [the] plaintiff must show a likelihood of success encompass not
only substantive theories but also establishment of jurisdiction.").  And, the District of Columbia Circuit has
indicated that failure to show a substantial likelihood of success is not jurisdictional, resulting in the denial of the
motion for a preliminary injunction, rather than dismissal of the case.  See Food & Water Watch, 808 F.3d at 913.
Because the Court ultimately concludes that the plaintiffs have failed to establish irreparable harm and thus does not

(continued . . .)

traditional standard for preliminary injunctions because the SMCRA "does not justify any departure from the four-factor test[,]" id. at 17, and that under the traditional four-factor standard, the plaintiffs are not entitled to a preliminary injunction.

The Court will first address the defendants' Local Rule 7(m) argument before assessing whether the plaintiffs have established that they are entitled to a preliminary injunction or stay.

## A.     Local Rule 7(m)

The defendants argue that the Court should dismiss the plaintiffs' motion because they failed to confer with the defendants before filing their motion, as required by District of Columbia Local Rule 7(m).  See id. at 2; see also LCvR 7(m) (requiring that, before filing any nondispositive motion in a civil action, a party "shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement").[7]  Although some courts have denied nonconforming motions for failure to confer, see, e.g., Oceans v. U.S. Dep't of Interior, No. 24-cv-141-RCL, 2024 WL 1885543, at *3 (D.D.C. Apr. 30, 2024), other courts in this District have exercised their direction and proceeded to the merits of the motion "in the interest of judicial economy[,]" Johnson v. ACB Ideas, LLC, No. 1:23-CV-02944 (RCL), 2024 WL

---

(. . . continued)
make a determination regarding the other factors, including substantial likelihood of success on the merits, the Court likewise makes no determination in regards to whether the plaintiffs have shown a substantial likelihood of standing.

[7] The plaintiffs argue that a motion for a preliminary injunction or stay "is 'clearly' a 'dispositive motion[,]'" and therefore not subject to Rule 7(m)'s duty to confer.  Pls.' Reply at 21 (first citing ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC, 951 F.3d 41, 48 (1st Cir. 2020); then citing Davidson v. Georgia-Pac., L.L.C., 819 F.3d 758, 764 (5th Cir. 2016)).  The District of Columbia Circuit "has defined 'dispositive motion' to 'include[] a motion that, if granted, would result in either the determination of a particular claim on the merits or elimination of such a claim from the case.'"  Oceans v. U.S. Dep't of Interior, No. 24-cv-141-RCL, 2024 WL 1885543, at *3 (D.D.C. Apr. 30, 2024) (quoting Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1215 (D.C. Cir. 1997)). Although the District of Columbia Circuit has not directly addressed whether motions for preliminary injunctions are dispositive, the plaintiffs conclude above that even if, assuming arguendo, the plaintiffs' motion for a preliminary injunction or stay is nondispositive and therefore subject to the duty to confer under Local Rule 7(m), the Court will excuse any failure to confer for the sake of judicial economy in light of the likely futility of any conferral given the parties' fundamental disagreements regarding the Final Rule.

3225994, at *4 (D.D.C. June 28, 2024); see also J.T.F. v. District of Columbia, No. 21-1453 (RC), 2023 WL 5528037, at *5 (D.D.C. Aug. 28, 2023) (considering the plaintiffs' motion on the merits despite not attempting to confer with the defendant prior to filing the motion); Ghawanmeh v. Islamic Saudi Acad., 268 F.R.D. 108, 111 (D.D.C. 2010) ("[W]ere the court to deny plaintiff's motion to amend, [the] plaintiff would simply refile the motion and defendants would be obliged to refile their opposition.").

Here, the Court similarly concludes that it will exercise its discretion and proceed to the merits "in the interest of judicial economy." Johnson, 2024 WL 3225994, at *4. Were the Court to deny the plaintiffs' motion for noncompliance with its Local Rules, the plaintiffs would very likely "simply refile the motion and [the] defendants would be obliged to refile their opposition." Ghawanmeh, 268 F.R.D. at 111. Clearly, the disagreement between the parties is not just rooted in procedure but also substance and accordingly there would likely be no benefit derived from the parties attempting to "narrow the areas of disagreement." LCvR 7(m); see Pls.' Reply at 22 ("No conference would have changed the outcome here. [The plaintiffs] believe the Final Rule is unlawful; the government believes the opposite. What the government calls 'misapprehensions,' in reality are fundamental disagreements over the Secretary's statutory authority.") (citation omitted). Therefore, rather than denying the plaintiffs' motion on procedural grounds and await the parties' resubmission of their filings after conferring, the Court will proceed to the merits of the plaintiffs' motion despite the alleged violation of Local Rule 7(m)'s duty to confer.

## B.    Preliminary Injunction

### 1.    Whether the Court Must Depart from the Traditional Four-Part Test

As an initial matter, the parties dispute the appropriate standard the Court must employ in evaluating whether the plaintiffs are entitled to a preliminary injunction. The plaintiffs argue

that Congress "lowered the bar" for challenges such as theirs under the SMCRA, and therefore, the Court should apply the SMCRA's three-part standard in determining whether to grant the plaintiff's motion for a preliminary injunction.  Pls.' Mem. at 11; see 30 U.S.C. § 1276(c).  In response, the defendants contend that the "SMCRA does not justify any departure from the traditional four-factor test[]" for determining a plaintiff's entitlement to a preliminary injunction because 30 U.S.C. § 1276(c) "by its own terms[] . . . does not apply to petitions for review of SMCRA regulations."  Defs.' Opp'n at 17.

As the Supreme Court has noted, "[w]hen interpreting a statute that authorizes federal courts to grant preliminary injunctions, 'we do not lightly assume that Congress has intended to depart from established principles.'"  Starbucks Corp. v. McKinney, 144 S. Ct. 1570, 1576 (2024) (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982)).  "Thus, absent a clear command from Congress, courts must adhere to the traditional four-factor test."  Id.

Under the SMCRA:

In the case of a proceeding to review any order or decision issued by the Secretary under this chapter, including an order or decision issued pursuant to subsection (c) or (d) of section 1275 of this title pertaining to any order issued under paragraph (2), (3), or (4) of subsection (a) of section 1271 of this title for cessation of coal mining and reclamation operations, the court may, under such conditions as it may prescribe, grant such temporary relief as it deems appropriate pending final determination of the proceedings if—

(1) all parties to the proceedings have been notified and given an opportunity to be heard on a request for temporary relief;

(2) the person requesting such relief shows that there is a substantial likelihood that he [or she] will prevail on the merits of the final determination of the proceeding; and

(3) such relief will not adversely affect the public health or safety or cause significant imminent environmental harm to land, air, or water resources.

30 U.S.C. § 1276(c) (emphasis added).

Here, the plaintiffs argue that "Congress lowered the bar for challenges under the [SMCRA]" seeking "[t]o obtain relief against 'any order or decision,'" Pls.' Mem. at 11, and the Final Rule represents a "decision" by the Secretary, see Pls.' Reply at 22. Therefore, the plaintiffs contend that they "need only show that (1) all parties have been notified and given an opportunity to be heard, (2) 'a substantial likelihood that [the plaintiffs] will prevail on the merits,' and (3) a stay 'will not adversely affect the public health or safety or cause significant imminent environmental harm to land, air, or water resources[,]'" Pls.' Mem. at 11 (quoting 30 U.S.C. § 1276(c)). In support of their position, the plaintiffs note that "[a] 'decision' includes any 'determination arrived at after consideration' or 'report of a conclusion[,]'" Pls.' Reply at 22 (quoting Merriam Webster's Dictionary (online ed.)), and that the Final Rule falls within this definition of a decision, id. The plaintiffs also rely on a district court opinion applying this lower standard in the context of a "petition for a temporary injunction restraining the [Secretary of the Interior] from enforcing a cessation order" against the plaintiff in that case, which operated the mine at issue. Jaward Corp. v. Watt, 564 F. Supp. 797, 797 (W.D. Va. 1983).

For the following reasons, the Court is unconvinced that Congress intended to lower the bar for review of the Secretary's rulemaking actions via § 1276(c). First, contrary to the plaintiffs' contention, the common definition of a "decision" does not clearly encompass the rulemaking actions at issue in this case. As defined in Black's Law Dictionary, a "decision" is "[a] judicial or agency determination after consideration of the facts and the law[.]" DECISION, Black's Law Dictionary (12th ed. 2024). Even assuming arguendo that this definition encompasses the rulemaking actions at issue here, "[i]t is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" Food & Drug Admin. v. Brown & Williamson Tobacco

Corp., 529 U.S. 120, 133 (2000) (quoting Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809

(1989)). And, the SMCRA expressly distinguishes between actions on one hand and orders and

decisions on the other hand. As the defendants correctly note, the challenge in this case arises

under 30 U.S.C. § 1271(a), which provides for judicial review of "[a]ny action by the Secretary

promulgating national rules of regulations[.]" 30 U.S.C. § 1271(a)(1) (emphasis added).

Elsewhere, the SMCRA provides for judicial review of "[a]ny order or decision issued by the

Secretary" in the context of administrative enforcement proceedings. Id. § 1271(b).

Additionally, in another section, the SMCRA expressly distinguishes between these terms,

noting that "[t]he commencement of a proceeding under [30 U.S.C. § 1276(d)] shall not, unless

specifically ordered by the court, operate as a stay of the action, order, or decision of the

Secretary." 30 U.S.C. § 1276(d) (emphasis added).

      Construing the SMCRA in this way—i.e., in light of the SMCRA's apparent distinction

between these processes—is further bolstered by the context and structure of the SMCRA.

Indeed, by consistently tying orders and decisions together, the SMCRA draws a further

distinction between processes involving adjudication, i.e., orders and decisions, and those that do

not, i.e., actions. See 30 U.S.C. § 1276(a)(2) (providing for judicial review for "[a]ny order or

decision issued by the Secretary in a civil penalty proceeding or any other proceeding required to

be conducted pursuant to 5 U.S.C. § 554"); id. § 1276(c) (delineating the standard of review for

"a proceeding to review any order or decision issued by the Secretary under th[e SMCRA],"

including those denying temporary relief from an enforcement order under 30 U.S.C. §§

1271(a)(2), 1271(a)(3), 1271(a)(4), or 1276(c)). And, as the defendants correctly indicate, the

Administrative Procedure Act (the "APA") itself excludes agency rulemaking from its definition

of an "order[,]" see 5 U.S.C. § 551(6) ("'[O]rder' means the whole or a part of a final

disposition, whether affirmative, negative, or declaratory in form, of an agency <u>in a matter other than rule making</u> but including licensing[.]") (emphasis added), and expressly ties orders to adjudications.  <u>See</u> <u>id.</u> § 551(7) (defining "adjudication" as the "agency process for the formulation of an order[]").  While neither the SMCRA nor the APA define what constitutes a "decision," the SMCRA's consistent use of the term "decision" in conjunction with the term "order" in the context of adjudicative processes adds further evidence that Congress viewed these terms as complementary, and distinct from rulemaking actions.

The plaintiffs' reliance on <u>Jaward</u> is inapposite because, as indicated above, that case concerned a "petition for a temporary injunction restraining the [Secretary of the Interior] from enforcing a cessation order" issued pursuant to 30 U.S.C. § 1271(a)(2) against the plaintiff in that case, which operated the mine at issue.  <u>See</u> <u>Jaward Corp.</u>, 564 F. Supp. at 797.  Therefore, that order clearly falls within the scope of the SMCRA's judicial review provisions.  <u>See</u> 30 U.S.C. § 1276(c) (noting that the three-part standard applies to an order or decision issued pursuant to, <u>inter alia</u>, 30 U.S.C. §§ 1271(a)(2), 1271(a)(3), or 1271(a)(4) for cessation of coal mining and reclamation operations).  However, 30 U.S.C. § 1276(c) notably excludes from its delineated provisions the provision at issue here, <u>i.e.</u>, 30 U.S.C. § 1271(a)(1).  And, "[u]nder the <u>expressio unius</u> cannon, 'the mention of one thing implies exclusion of another thing.'"  <u>Changji Esquel Textile Co. Ltd. v. Raimondo</u>, 573 F. Supp. 3d 104, 114–15 (D.D.C. 2021) (Walton, J.) (quoting <u>Halverson v. Slater</u>, 129 F.3d 180, 185 (D.C. Cir. 1997)).  Although the District of Columbia Circuit has noted that this canon "cannot carry the day over the text and structure of [a] statute[] [that] confers specific and broad authority[,]" <u>Farrell v. Blinken</u>, 4 F.4th 124, 137 (D.C. Cir. 2021), in this case, the negative implication arising out of § 1276(c)'s exclusion of the provision at issue, <u>i.e.</u>, § 1271(a)(1), is consistent with the Court's conclusion, based on the text and

structure of the SMCRA, that Congress did not intend to subject agency rulemaking actions to the SCMRA's lower standard for judicial review of orders and decisions.

Finally, if the Court were to adopt the plaintiffs' reading of the statutory language, it would not only run counter to Congress's apparent intent to distinguish between actions on one hand, and orders and decisions on the other hand, but it would lower the bar for challenges to a wide swath of actions by the Secretary including, but not limited to, rulemaking actions. Without "a clear command from Congress," Starbucks Corp., 144 S. Ct. at 1576, that such SMCRA rulemaking challenges should be assessed under the less stringent standard advocated by the plaintiffs, the Court concludes that it "must adhere to the traditional four-factor test[,]" id., in determining whether the plaintiffs' are entitled to injunctive relief.

### 2.  Whether the Court Must Grant a Preliminary Injunction

Having determined that the Court must assess the plaintiffs' request for a preliminary injunction pursuant to the traditional standard for granting such injunctions, the Court will now address the merits of the plaintiffs' arguments.

To reiterate, preliminary injunctions are "extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Cobell, 391 F.3d at 258.  And, a party moving for a preliminary injunction must therefore show "(1) a substantial likelihood of success on the merits, (2) that [it] would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." Chaplaincy of Full Gospel Churches, 454 F.3d at 297.  In "seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction."  Abdullah, 753 F.3d at 197 (internal quotation marks omitted).  However, as noted

earlier, "[w]hen the defendant is the government, factors (3) and (4) merge." Anatol Zukerman & Charles Krause Reporting, LLC, 64 F.4th at 1364.

And, as indicated above, "a showing that irreparable injury is 'likely' is the sine qua non for obtaining a preliminary injunction—it is what justifies the extraordinary remedy of granting relief before the parties have had the opportunity fully to develop the evidence and fully to present their respective cases." Achagzai, 2016 WL 471274, at *3–4.  Therefore, "[a] movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." Chaplaincy of Full Gospel Churches, 454 F.3d at 297.  And, as discussed above, Winter "makes clear[] [that] a mere 'possibility' of irreparable harm will not suffice." Cal. Ass'n of Private Postsecondary Schs., 344 F. Supp. 3d at 167 (quoting Winter, 555 U.S. at 22).

The plaintiffs argue that they have established that they are entitled to a preliminary injunction because (1) they have a "substantial likelihood of success[]" because "the Final Rule contravenes the [SMCRA] and principles of reasoned decisionmaking[,]" Pls.' Mem. at 11; (2) "[w]ithout an injunction, the Final Rule will inflict irreparable harm[]" in several ways discussed infra, id. at 41–42; and (3) granting relief is in the public interest because "the federal government has no interest in perpetuating an unlawful regulation[,]" while relief would promote the public interest by ensuring that federal agencies abide by the law, promoting federalism, and restoring a better balance of environmental protection and industrial prosperity, id. at 42–43. The defendants respond that the plaintiffs are not entitled to injunctive relief because (1) they have "failed to demonstrate that they are likely to succeed on the merits[,]" Defs.' Opp'n at 20; (2) they have "fail[ed] to clear the high bar of demonstrating irreparable injury[, which] provides an independent basis for denying their motion[,]" id. at 39 (citing Chaplaincy of Full Gospel

16

Churches, 454 F.3d at 297); and (3) "[t]he balance of the equities and the public interest weigh against enjoining [the Final] Rule[,]" id. at 43.

The Court will begin its analysis by assessing whether the plaintiffs have established that they will suffer irreparable harm absent the grant of a preliminary injunction.  Because the Court ultimately concludes that they have not carried their burden to demonstrate that they will suffer irreparable harm, and because their "failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, [regardless of whether] the other three factors entering the calculus merit such relief[,]" Chaplaincy of Full Gospel Churches, 454 F.3d at 297, the Court need not address the remaining factors.

   a.    **Irreparable Harm**

The plaintiffs claim that they will suffer three types of irreparable injuries if the Court does not grant their request for a preliminary injunction.  First, they contend that, if not enjoined, the Final Rule "will inflict an irreparable sovereign injury [on the plaintiffs] by fundamentally altering the balance between federal and state regulation and by allowing federal regulators to intrude into areas within the exclusive jurisdiction of [s]tate regulatory authorities."  Pls.' Mem. at 41 (citing Texas v. Env't Prot. Agency, 829 F.3d 405, 434 (5th Cir. 2016)).  Second, the plaintiffs contend that the Final Rule, if not enjoined, "will increase administrative burdens on [s]tates[,]" primarily due to an increased volume of ten-day notices and decreased flexibility in how state regulatory authorities may respond to those notices.  Id.  Third, the plaintiffs contend that the Final Rule "threatens to delay the issu[ance] of permits," which could have downstream effects on mining operators, power plants, and consumers.  Id. at 42.  The defendants respond that the plaintiffs have not established that they will suffer irreparable harm if the Final Rule is not enjoined because (1) the plaintiffs "have no sovereign interest in avoiding the Secretary's

exercise [of her oversight and enforcement] authority[ under the SMCRA,]" and have failed to "even explain how an injury to their sovereign authority will be irreparable[,]" Defs.' Opp'n at 40; (2) the plaintiffs' "proffered harms from increased administrative burden are highly speculative[,]" id. at 41, and in any event are not irreparable, see id. at 42; and (3) the plaintiffs' claims of harm to themselves, their industry, and consumers are "built upon layers of speculation and cannot form the basis for an irreparable injury, which must be actually and imminently impending[,]" id. at 43 (citing Chaplaincy of Full Gospel Churches, 454 F.3d at 297). The Court will assess each of these allegedly irreparable harms in turn.

To establish irreparable harm for the purposes of seeking a preliminary injunction, the plaintiffs must sufficiently show "harm [that is] certain and great . . . and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm." League of Women Voters v. Newby, 838 F.3d 1, 7 (D.C. Cir. 2016) (citation, internal quotation marks, and alterations omitted). "[P]roving 'irreparable' injury is a considerable burden," Power Mobility Coal. v. Leavitt, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (Walton, J.) (quoting Wis. Gas Co. v. Fed. Energy Regul. Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985)), and establishing the "possibility of irreparable harm" is not sufficient to meet this burden, Winter, 555 U.S. at 22.

For the following reasons, the Court concludes that the plaintiffs have not demonstrated an irreparable injury. First, the Court concludes that the plaintiffs' claimed sovereign injury cannot support such a claim. The plaintiffs contend that the Final Rule, if not enjoined, "will inflict an irreparable sovereign injury by fundamentally altering the balance between federal and state regulation and by allowing federal regulators to intrude into areas within the exclusive jurisdiction of [s]tate regulatory authorities." Pls.' Mem. at 41 (citing Texas, 829 F.3d at 434). The defendants respond that, contrary to the plaintiffs' characterization of their "exclusive

jurisdiction," the SMCRA expressly provides for federal oversight and enforcement, and that the plaintiffs have failed to "even explain how an injury to their sovereign authority will be irreparable." Defs.' Opp'n at 40.

Although the Supreme Court has noted that a state's "inability to enforce its duly enacted plans clearly inflicts irreparable harm on [that] [s]tate," Abbott v. Perez, 585 U.S. 579, 603 n.17 (2018); see Maryland v. King, 567 U.S. 1301, 1303 (2012) ("[A]ny time a [s]tate is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quoting New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1351 (1977) (Rehnquist, J.)), the Court concludes for several reasons that the plaintiffs have not established irreparable harm arising out of their alleged sovereign injury. Here, the plaintiffs are not being "enjoined by a court from effectuating statutes enacted by representatives of [their] people," Maryland, 567 U.S. at 1303, nor does the Final Rule render the plaintiffs unable "to enforce [their] duly enacted plans[,]" Abbott, 585 U.S. 603 n.17. While the plaintiffs contend that the Final Rule encroaches on their exclusive jurisdiction, it appears clear that Congress, in enacting the SMCRA, sought to establish a federal oversight and enforcement role to work collaboratively with state regulatory authorities. See supra Section I.A.1. Given this clear indication of shared authority, and the lack of proof that the plaintiffs have been meaningfully prevented from exercising their jurisdictional authority pursuant to the SMCRA or state law, the plaintiffs have not carried their burden of establishing an irreparable injury arising out of the alleged intrusion on their sovereignty. Nor have the plaintiffs establish that the Final Rule will cause them to suffer any other form of irreparable sovereign harm.[8]

---

[8] As the defendants indicate, in Texas, which the plaintiffs cite in support of their position, the Fifth Circuit expressly did not find that there was an irreparable sovereign harm, merely noting that Texas "may" have suffered

(continued . . .)

Second, the Court concludes that the plaintiffs have not established that their claimed injury due to increased burdens on state regulatory authorities is imminently impending and irreparable.  As noted above, the plaintiffs contend that the Final Rule, if not enjoined, "will increase administrative burdens on [s]tates[,]" primarily due to an increased volume of ten-day notices and decreased flexibility in how state regulatory authorities may respond to those notices. Pls.' Mem. at 41.  In support of their argument, the plaintiffs provide declarations from various state regulatory authorities regarding their experiences with ten-day notices.  See Pls.' Mot., Exhibit ("Ex.") 2 (State Regulatory Authority Declarations), ECF No. 24-2.  However, as the defendants correctly note, these declarations do not support the type of imminent, irreparable harm claimed by the plaintiffs.  The plaintiffs cite few instances of ten-day notices issued in recent years, including the period pre-dating the 2020 Final Rule, and more importantly, they make almost no mention of any increase in ten-day notices under the 2024 Final Rule.  See id., Ex. 2 (Declaration of Kathy H. Love) ¶ 16 (noting that the Alabama Surface Mining Commission has "received one [t]en[-d]ay [n]otice [ ] in the past ten years[]"); id., Ex. 2 (Declaration of Steven J. Weinzapfel) ¶ 19 (representing that Indiana's state regulatory authority last received a ten-day notice in 2016); id., Ex. 2 (Declaration of Stephen Lee) ¶ 7 ("Louisiana has not received a ten-day notice from OSMRE since 2010."); id., Ex. 2 (Declaration of Randy Christman) ¶ 10 (mentioning only one instance—in 2010—when North Dakota's state regulatory authority received a ten-day notice); id., Ex. 2 (Declaration of Dana Dean) ¶ 19 ("In 2016, Utah['s state regulatory authority] received its most recent ten-day notice from OSMRE."); id., Ex. 2 (Declaration of Marshall R. Moore) ¶ 18 ("In 2018, Virginia [ ] received its most recent ten-day

---

(. . . continued)

irreparable harm in the form of an "institutional injury . . . from the inversion of the federalism principles enshrined in the Clean Air Act . . . ."  Texas, 829 F.3d at 434.

notice from OSMRE.").[9]  While the plaintiffs also rely on West Virginia's reported increase in ten-day notices following the 2024 Final Rule going into effect, <u>see</u> Pls.' Mem. at 41; <u>see also</u> Pls.' Mot., Ex. 2 (Declaration of Jonathan Rorrer) ¶¶ 20–21 (noting that "the rate of ten-day notices issued by OSMRE" to West Virginia's state regulatory authority "has increased by a factor of 47 since the Final Rule became effective[]"), as the defendants note, the plaintiffs have provided no further information about the nature of these ten-day notices and their relationship to the challenged modifications contained in the Final Rule.  <u>See</u> Defs.' Opp'n at 42 (noting that Mr. Rorrer "makes no effort to explain how many of the [eleven ten-day notices] the [s]tate claims it received could have been issued under the 2020 [Final] Rule or whether any of the [ten-day notices] led either the [s]tate or OSMRE to order the permittees to take corrective action").  Without such information, the Court is unable to conclude that the increase in ten-day notices was caused by the Final Rule, and even if it was, what was the basis for the increase.  Therefore, the plaintiffs have failed to establish that they will suffer irreparable harm without enjoining the Final Rule.[10]

Finally, the Court concludes that the plaintiffs' claimed injury resulting from potential adverse impacts on the states, their industry, and citizens, caused by anticipated delays in issuing permits, is too speculative to support a claim of irreparable harm.  As indicated above, the

---

[9] One declaration—from the Wyoming state regulatory authority—fails to mention any instance in which Wyoming has received a ten-day notice from OSMRE.  <u>See generally</u> Pls.' Mot., Ex. 2 (Declaration of Kyle Wendtland).

[10] The plaintiffs further argue that, in addition to this purported increase in volume, the Final Rule's restrictions on how state regulatory authorities may respond to such notices, <u>i.e.</u>, the Final Rule's "prohibition on considering readily available information from [s]tates and elimination of the requirement that citizens contact [s]tates[,] also contribute to increased burdens."  Pls.' Mem. at 23–24.  The plaintiffs further contend that, by repealing the 2020 Final Rule, which "reduce[d] burdens on [s]tate regulatory authorities," the Final Rule necessarily increases burdens on state regulatory authorities.  Pls.' Mem. at 23 (quoting 2020 Final Rule, 85 Fed. Reg. at 75,188).  However, as with the plaintiffs' assertions relating to the volume of notices, the plaintiffs have failed to provide any concrete evidence establishing that these restrictions or any other modifications contained in the Final Rule are sufficiently onerous to support their claim of irreparable harm.  Without any such information, the Court cannot conclude that the plaintiffs have met their burden.

plaintiffs contend that the Final Rule "threatens to delay the issu[ance] of permits," which (1) "could interfere with mining operators' contractual obligations[]" and (2) "could jeopardize electrical reliability, harming consumers."  Pls.' Mem. at 42 (emphasis added).  The defendants respond that these purported injuries are "built upon layers of speculation and cannot form the basis for an irreparable injury, which must be actually and imminently impending[,]" Defs.' Opp'n at 43 (citing Chaplaincy of Full Gospel Churches, 454 F.3d at 297).  The Court agrees with the defendants that the plaintiffs have provided no concrete evidence in support of the alleged irreparable harm the Final Rule will cause to the states' industry and consumers.  To the contrary, the plaintiffs point only to one declaration from a state regulatory authority that "[p]otential permitting delays from ten-day notices could jeopardize a mine's ability to meet its contractual obligations to the neighboring power plant, potentially resulting in an unreliable power supply for electric consumers."  Pls.' Mot., Ex. 2 (Declaration of Randy Christman) ¶ 18 (emphasis added).  This speculative chain of possibilities is far from the concrete proof the plaintiffs must show to carry their "considerable burden[]" to justify the grant of a preliminary injunction.  Power Mobility Coal., 404 F. Supp. 2d at 204 (quoting Wis. Gas Co., 758 F.2d at 674).

Even assuming arguendo that these purported economic harms are not overly speculative, the plaintiffs' claim of irreparable harm would still fail.  "It is well settled in this Circuit that 'economic loss does not, in and of itself, constitute irreparable harm.'"  Air Transport Ass'n of Am., Inc. v. Export-Import Bank of the U.S., 840 F. Supp. 2d 327, 335 (D.D.C. 2012) (quoting Wisconsin Gas Co., 758 F.2d at 674).  However, "entities that make 'a strong showing that the economic loss would significantly damage its business above and beyond a simple diminution of profits, or demonstrate[] that the loss would cause extreme hardship to the business, or even

threaten destruction of the business[,]' may be entitled to preliminary injunctive relief." <u>Changji Esquel Textile Co. Ltd.</u>, 573 F. Supp. 3d at 117 n.8 (quoting <u>Air Transport Ass'n of Am., Inc.</u>, 840 F. Supp. 2d at 336) (emphasis added).  Here, however, unlike in <u>Texas</u>, the plaintiffs in this case do not include mining operators and consumers who would allegedly suffer irreparable harm from not enjoining the Final Rule.  <u>See</u> <u>Texas</u>, 829 F.3d at 434 (noting that "[t]he plant closures here threaten the very existence of some of <u>Petitioners'</u> businesses") (emphasis added).  Therefore, the Court cannot grant a preliminary injunction on the basis of irreparable economic harm to the plaintiffs themselves because they have not shown that any purported economic harm would affect the plaintiffs, rather than third parties who are not before the Court.  Further, the plaintiffs offer no explanation as to why, if the Final Rule will inflict irreparable harm to the mining operators and consumers in their states, those parties could not themselves bring suit to prevent those injuries.  <u>See, e.g.</u>, <u>Texas</u>, 829 F.3d at 434–35 (concluding that the petitioners, who included plant operators and consumer groups, had demonstrated irreparable harm).  The plaintiffs' failure to provide concrete proof underpinning their claims of irreparable harm is fatal to their request for injunctive relief.

In sum, the Court concludes that the plaintiffs have not carried their "considerable burden," <u>Power Mobility Coal.</u>, 404 F. Supp. 2d at 204 (quoting <u>Wis. Gas Co.</u>, 758 F.2d at 674) by providing "proof that the[ir] [ ] injury is 'certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm[,]'" <u>id.</u> (emphasis omitted) (quoting <u>Varicon Int'l</u>, 934 F. Supp. at 447).[11]  And, because

---

[11] It also bears mention that the plaintiffs moved for a preliminary injunction more than three months after the Final Rule went into effect, <u>see</u> Pls.' Mot. at 1 (filed August 16, 2024); Final Rule, 89 Fed. Reg. at 24,714 ("This rule is effective May 9, 2024"), despite being on notice that since April 9, 2024 that the Final Rule was to take effect on May 9, 2024, <u>see</u> Final Rule, 89 Fed. Reg. at 24,714.  This significant delay in moving for a preliminary injunction further weighs against the plaintiffs' claims of irreparable harm because, presumably, if the harm from the Final Rule was truly irreparable, the plaintiffs would not have waited more than three months after the Final Rule went

(continued . . .)

the plaintiffs' "failure to show any irreparable harm is [ ] grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief[,]" <u>Chaplaincy of Full Gospel Churches</u>, 454 F.3d at 297, the Court concludes it must deny the plaintiffs' motion without addressing the remaining factors.[12]

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the plaintiffs' motion for a preliminary injunction or a stay of the Department's Final Rule.

**SO ORDERED** this 24th day of December, 2024.[13]

REGGIE B. WALTON
United States District Judge

---

(. . . continued)
into effect to seek an injunction.  <u>See</u> <u>Fund for Animals v. Frizzell</u>, 530 F.2d 982, 987 (D.C. Cir. 1975) (reasoning that the decision to deny preliminary injunction was "bolstered by the delay . . . in seeking one" and finding delay of forty-four days "inexcusable"); <u>Air Transp. Ass'n of Am., Inc.</u>, 840 F. Supp. 2d at 340 (finding preliminary injunctive relief inappropriate where there was a measure of "inaction" and where the alleged harm was "economic and speculative [in] nature"); <u>Newdow v. Bush</u>, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("[U]nexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm[.]"); <u>Mylan Pharm., Inc. v. Shalala</u>, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (finding delay of two months "militates against a finding of irreparable harm").

[12] And, because "[t]he standard for a stay is the same as for a preliminary injunction[,]" <u>Committee for a Constructive Tomorrow</u>, 2024 WL 2699895, at *2 (citing <u>Nken</u>, 556 U.S. at 433–34), the Court similarly concludes it must deny the plaintiffs' motion for a stay.

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.